UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GILBERT LAW, | No. 2:16-cv-1830-GEB-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| LVN GRIPE, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding without counsel this action brought pursuant to 42 U.S.C. § 1983, has filed a motion for summary judgment.[1] ECF Nos. 81, 83. Defendants have opposed that motion and moved for summary judgment in their favor. ECF No. 84. For the reasons that follow, plaintiff's motion must be denied, and defendants' motion must be granted.

**I.  Background**

Plaintiff filed this action on July 22, 2016, alleging that he was sexually assaulted by defendant Rubino, a prison guard at California Medical Facility ("CMF"), on June 24, 2016 at 2 a.m. ECF No. 1 at 1. He further claims that he reported the assault to defendant Gripe, a licensed vocational nurse ("LVN") at CMF, at 11 a.m. the same day, but that she denied him medical care for his penis, which was very swollen, bleeding, and in pain as a result of the alleged assault. *Id.*

---

[1] Plaintiff actually filed two motions for summary judgment which are identical, except that he has appended additional exhibits to one filing. ECF Nos. 81, 83.

1

at 1-2. Plaintiff seeks $500 million in damages and an injunction mandating that the defendants "keep away" from him and that he be provided "24 hr. Fed. Protection." *Id.* at 2. His motions for summary judgment reiterate these claims. ECF Nos. 81, 83.

Defendants, in their motion for summary judgment, argue that plaintiff failed to administratively exhaust his claims prior to filing this action. They also argue that plaintiff cannot prove that either defendant violated his constitutional rights, and that defendants are entitled to qualified immunity.

**II.     The Parties' Factual Contentions and Evidence**

Plaintiff's motion simply restates the allegations of his complaint; i.e., that defendant Rubino sexually assaulted him and that defendant Gripe was deliberately indifferent to his consequent need for medical care. Plaintiff states that his deposition testimony and other discovery responses prove that those allegations are undisputed, without telling the court what parts of these discovery materials he relies on. To support his motion, plaintiff has provided: (1) a CDCR form 22 on which he has written that he provided his responses to defendants' discovery requests to an unidentified custody officer (ECF No. 81 at 7); (2) the California Correctional Health Care Services "Prison Rape Elimination Act Procedure" (*id.* at 8-13); and (3) his deposition transcript (*id.* at 14-41).

The CDCR form 22 is not relevant to the summary judgment motions. The Prison Rape Elimination Act ("PREA") policy is only marginally relevant, as the question before the court is not whether defendants violated some state policy or regulation, but whether defendants violated the Eighth Amendment. *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981) ("Section 1983 protects against the 'deprivation of any rights, privileges, or immunities secured by the Constitution or laws.' … Violations of state law alone are insufficient [to state a Section 1983 claim].").

Plaintiff's deposition testimony, on the other hand, contains much relevant evidence.
/////
/////
/////

2

Regarding the exhaustion of his claim against Rubino, plaintiff testified, "When you file a 602 alleging a sexual assault, they're supposed to be processed as an emergency. Well, the appeals coordinator, Strickland, don't do that, you know, which prevents me from exhausting my administrative remedy." ECF No. 81 at 19.

As to the substance of his claims, plaintiff testified that he first met Rubino in San Francisco, at Carl's Junior, in the summer of 2015, when he sold Rubino a pair of stolen sunglasses. *Id* at 22-23. Plaintiff testified, "I see a lot of people around here that I know from Carl's Junior Civic Center that's been harassing me, following me around, selling me stolen merchandise and drugs, and now they're working at the same prison that I'm housed at. That's very odd." *Id.* at 22. Plaintiff remembered Rubino from the Carl's Junior because he never forgets faces. *Id.*

On the morning of June 24, 2016, plaintiff was standing at his cell door to see who was doing security round checks. *Id.* at 24. When Rubino approached, plaintiff asked the time. *Id.* Rubino responded that it was 2:00 a.m. and shined his light in plaintiff's cell. *Id.* He recognized plaintiff and said, "Oh, you. Carlos Law. This is what time it is." *Id.* Then Rubino opened the food port, "stuck his hand in there and masturbated me." *Id.* Plaintiff didn't tell him to stop, because "it felt pretty good." *Id.* at 25. Rubino said nothing during the contact, but plaintiff said, "Damn that feel good." *Id.* The sexual encounter lasted between two and four minutes. *Id.* Plaintiff did not immediately alert anyone of the alleged assault because Rubino was the only officer on duty. *Id.* at 26. Instead, he went to sleep. *Id.*

The next day, plaintiff felt pain, and when he urinated, blood came out. *Id.* He concluded that Rubino had squeezed his penis too hard or injured him by failing to use a lubricant. *Id.* Plaintiff testified that his penis was painful, bleeding, and suffering for 12 to 14 months. *Id.* Plaintiff immediately submitted a grievance at shift change on the morning of June 24th. *Id.*

Plaintiff was seen by defendant Gripe at 11:00 a.m. the same day for his claimed injury.

/////
/////
/////

*Id.* at 28. He told her that his penis was swollen, bleeding, and in pain from being sexually assaulted by Rubino. *Id.* But Gripe did not provide him with medical care. *Id.* She saw him for about five to ten minutes, listened to his description of his injuries, said, "Give me a minute," and then disappeared and did not return. *Id.* at 31. Plaintiff was then escorted back to a cell. *Id.*

Plaintiff submitted a grievance to address Gripe's failure to provide care to him, but the grievance was denied. *Id.* at 29. Because his grievance against Gripe had been denied, plaintiff saw no point in discussing the injuries to his penis with any other care provider. *Id.* Plaintiff saw his personal care physician many times during the 12 to 14 months that his penis was injured, but never brought the injury to her attention. *Id.* at 29-30.

Defendants contend that plaintiff failed to properly exhaust his claims against them before filing suit and that he cannot prove that either defendant violated his constitutional rights. On the exhaustion issue, defendants have produced the declarations of M. Voong, chief of CDCR's Office of Appeals ("OOA"), and S. Gates, Chief of CDCR's Health Care Correspondence and Appeals Branch ("HCCAB"). ECF Nos. 84-11, 84-7. OOA deals with all inmate non-medical appeals at the third level of review (ECF No. 84-11 at ¶ 4), and HCCAB deals with all inmate medical appeals at the third level (ECF No. 84-7 at ¶ 2).

According to Voong, OOA has no record of any appeal at the third level of review between the date of the alleged assault (June 24, 2016) and August 10, 2016 (the instant case was filed on July 22, 2016 and plaintiff filed an amended complaint on August 10th). ECF No. 84-11 at ¶ 8. Plaintiff did submit an appeal (Log No. CMF-16-01871) to the third level on September 6, 2016, but the appeal was screened out on December 23, 2016 for failure to attach a CDCR Form 1858 Rights and Responsibilities Statement and plaintiff never re-submitted it. *Id.* at ¶ 8 and Ex. A.

Defendants have provided the court with copies of Log No. CMF-16-01871 as Exhibit B to the Voong declaration. Those copies reveal that plaintiff submitted the grievance on July 6, 2016. ECF No. 84-11, Ex. B. In that grievance, plaintiff complained that correctional officer Helmrich had denied him medical care after he complained that his penis was in pain because he had been raped by Officer Rubino. *Id.* Reviewing staff sent the grievance directly to the second

4

level of review on July 13, 2016. *Id.* The grievance was denied at the second level on August 18, 2016. *Id.*

According to Gates, plaintiff submitted one health care grievance between June 24, 2016 and August 10, 2016 that was adjudicated at the third level of review: Log No. CMF SC 16000724. ECF No. 84-7 at ¶ 8. In Log No. CMF SC 16000724, plaintiff complained that Gripe had failed to provide him with any medical care after he was raped by a correctional officer, who he identified as Rubino in the "action requested" section of the form. *Id.* Plaintiff submitted the grievance on July 5, 2016 and it was sent directly to the second level on July 6, 2016. *Id.*, Ex. B. The second level reviewer denied the grievance on July 13, 2016, and plaintiff submitted it to the final level of review on July 18, 2016. *Id.* At the third level, the reviewer noted, "You raised allegations against Correctional Officer (CO) Rubino. Your appeal was categorized as a health care staff complaint and any allegations against CO Rubino are a custody matter unrelated to your allegation of health care staff misconduct. Therefore, these allegations will not be addressed in this appeal and should be addressed through the appropriate custody channels." *Id.* The appeal was denied on July 27, 2016. *Id.*

On the merits, defendants have provided declarations from both defendants as well as a declaration from Correctional Captain T. Huntley and Dr. B. Feinberg. ECF Nos. 84-8, 84-10, 84-9, 84-6. Rubino declares that he worked from 10 p.m. to 6 a.m. on the night spanning June 23, 2016 and June 24, 2016. ECF No. 84-10 at ¶ 2. He was the only floor officer on duty in the Building M-3 Administrative Segregation Unit that night. *Id.* Plaintiff was housed in Cell Number 310. *Id.* As part of his job, Rubino had to tour the unit every 30 to 35 minutes to perform a welfare/security check. *Id.* ¶ 3. Rubino's general practice was to walk the tiers, look into each cell, visually confirm the inmate's presence, and ensure that the inmate was not trying to harm himself, produce or hide contraband, or destroy property. *Id.* He would document the welfare/security checks electronically using the Guard One Electronic Monitoring System. *Id.* ¶ 4. To do so, Rubino would touch a small handheld device to an electronic sensor on each cell door. *Id.* The time the device touches the sensor is recorded in a software program called "Rounds Tracker." *Id.* At the end of Rubino's shift, he would dock the handheld device and

5

upload the records to the program. *Id.* Rubino used the Guard One system on the night of June 23/24 and uploaded the records into Rounds Tracker. *Id.* ¶ 5. Rubino does not recall interacting with plaintiff that night, and declares that he has never had any sexual contact with him. *Id.* ¶ 6.

Captain Huntley provides more information about the Guard One System as well as the records from Rounds Tracker for the night of June 23/24, 2016. ECF No. 84-9. Those records show that Rubino touched the handheld device to the sensor of plaintiff's cell at 2:04 a.m. *Id.*, Ex. A. Rubino touched the device to the sensors of 13 other cells the same minute and to a total of 37 cells between 2:03 a.m. and 2:05 a.m. *Id.* The Rounds Tracker records show that Rubino touched the sensor to the cells in the unit once per half-hour during his shift. *Id.*

Defendant Gripe declares that her job duties are circumscribed by the LVN Scope of Practice Standards promulgated by California Correctional Health Care Services. ECF No. 84-8 at ¶ 3. As an LVN, she cannot act independently and must practice under the direction of a registered nurse or doctor at all times. *Id.* ¶ 4. She cannot diagnose an inmate's medical complaints, order tests, or perform comprehensive assessments or complete medical examinations. *Id.* She cannot prescribe medicine or even dispense non-prescription medicine. *Id.* What she *can* do is perform a basic assessment of a patient, which consists of "the collection of subjective and objective data and recognition of problems or abnormal conditions specific to an inmate-patient," such as taking vital signs or noting general skin appearance and any obvious injuries. *Id.* ¶ 5.

When an inmate reports that he has been sexually assaulted by a correctional officer, it is Gripe's role to complete a CDCR Form 7219 Medical Report of Injury or Unusual Occurrence, document any injuries within the scope of her duties, and then refer the inmate to the R.N. on duty. *Id.* ¶ 6. The R.N. then takes over the inmate's care. *Id.*

On June 24, 2016, Gripe was notified of plaintiff's arrival in the CMF Facility B-1 Triage and Treatment Area at around 12 p.m. *Id.* ¶ 7. She examined him at around 12:10 p.m., completing a Form 7219. *Id.* & Ex. A. As part of her job, she would have noted on the form any swelling, bruising, active bleeding, or other observed injury. *Id.* ¶ 8. The Form 7219 shows that she did not identify any such injuries to plaintiff. *Id.*

| | |
|---|---|
| 1 | Also as part of her job, Gripe would have documented subjective complaints of pain on |
| 2 | the 7219, and she did so in plaintiff's case. *Id.* ¶ 9. The form shows that plaintiff complained of |
| 3 | pain in his groin area. *Id.* & Ex. A. Gripe also documented plaintiff's comments about his pain, |
| 4 | writing, "I'm in a lot of pain from being sexually assaulted by an officer less than 24 hours ago." |
| 5 | *Id.* This note indicates to Gripe that plaintiff did not tell her he was experiencing swelling, |
| 6 | bruising, or bleeding, because she did not note such injuries. *Id.* |
| 7 | When she completed the 7219, a supervising R.N. called her and directed her to respond |
| 8 | to a medical incident in another area of the institution. *Id.* ¶ 10. When she returned, Gripe saw |
| 9 | that plaintiff was no longer there. *Id.* She told a supervising R.N. that plaintiff had made a sexual |
| 10 | assault allegation and needed to be returned for examination by an R.N., thus completing her job |
| 11 | duties with respect to plaintiff. *Id.* |
| 12 | Dr. Feinberg, Chief Medical Consultant for the California Correctional Health Care |
| 13 | Services Office of Legal Affairs, reviewed plaintiff's medical records from June 2016 through the |
| 14 | end of 2017. ECF No. #84-6, ¶¶ 3-8. Feinberg looked specifically for injuries to plaintiff's penis |
| 15 | caused by an alleged sexual assault on June 24, 2016 and any records of treatment thereafter. *Id.* |
| 16 | ¶ 9. He found no record that plaintiff experienced any swelling or bleeding in his penis on June |
| 17 | 24, 2016. *Id.* ¶ 10. "If Plaintiff's penis had been squeezed or vigorously masturbated to the point |
| 18 | where he suffered swelling and bleeding for twelve to fourteen months, as he stated in his |
| 19 | Amended Complaint and in his deposition testimony, I expect there to be medical records |
| 20 | documenting those injuries. There is nothing in the medical record to suggest Plaintiff |
| 21 | experienced any swelling or bleeding in his penis on June 24, 2016, or on any later date." *Id.* |
| 22 | ¶ 11. Feinberg would also expect there to have been substantial bruising to plaintiff's penis from |
| 23 | Rubino's alleged conduct, but found no indication of such in plaintiff's medical records. *Id.* ¶ 12. |
| 24 | According to Feinberg, any swelling, bleeding, or bruises to plaintiff's penis would have been |
| 25 | readily apparent to medical staff on physical examination, and staff would have documented such |
| 26 | on a Form 7219. *Id.* ¶ 13. |
| 27 | Defendant Gripe did not document such injuries. *Id.* ¶ 14. Nor did the physician who |
| 28 | examined plaintiff on June 27, 2016 for his complaint of pain in his penis. *Id.* ¶ 17. That doctor |

found no objective evidence on plaintiff's penis that he had been masturbated, nor was there any ulcer, swelling, bruising, or other wound to the penis. *Id.* Plaintiff's penis was again examined at his request on July 12, 2016 and was found normal with no signs of trauma. *Id.* ¶ 20.

Dr. Feinberg notes that plaintiff was referred to a mental health care provider concerning his claim that Rubino had sexually assaulted him. *Id.* ¶ 16. Mental health staff noted that plaintiff had a history of reporting staff sexual assault and that a previous treatment note indicated that he had made one such report to retaliate against a staff member for taking contraband from him. *Id.*

Dr. Feinberg concludes, "If Plaintiff experienced swelling, bleeding, and pain in his penis for twelve to fourteen months . . ., I expect Plaintiff would have complained repeatedly about those conditions and requested immediate medical treatment for those injuries. Plaintiff's records reflect that he had multiple contacts with prison medical staff after July 12, 2016, but he did not request any further treatment for his penis. [¶] In my professional opinion, Plaintiff's claim that he suffered from swelling, bleeding, and pain in his penis for twelve to fourteen months due to a sexual assault is contradicted by his medical records. The medical records do not show any injury to Plaintiff's penis." *Id.* ¶¶ 22-23.

### III. The Cross-Motions for Summary Judgment

#### a. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On

the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 84-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### b. **Plaintiff's Motions for Summary Judgment**

As previously noted, plaintiff's two motions for summary judgment are identical, except that plaintiff has appended additional evidence to one of the filings. ECF Nos. 81, 83. Plaintiff asserts two claims: (1) that Rubino violated his Eighth Amendment rights by sexually assaulting him; and (2) Gripe violated his Eighth Amendment rights by failing to provide him with adequate treatment for the alleged assault. For the reasons set forth below, the undisputed facts and evidence before the court show that summary judgment must be granted in favor of defendants. Accordingly, plaintiff's motions must be denied.

### c. **Defendants' Motion for Summary Judgment**

#### i. **Exhaustion**

The PLRA's Exhaustion Requirement. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only

provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR Form 602), which instructs the inmate to describe the problem and outline the action requested. Title 15 of the California Code of Regulations, § 3084.2 provides further instructions, which include the direction to "list all staff member(s) involved" and "describe their involvement." Cal. Code Regs., tit. 15, § 3084.2(a)(3). If the prisoner does not know the staff member's name, first initial, title or position, he must provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.*

The grievance process, as defined by the regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See Cal. Code Regs*. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id*. § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 216 (2007). To bear this burden:

> [A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so

12

> demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) in the extremely rare event that the plaintiff's failure to exhaust administrative remedies is clear on the face of the complaint. *Id.* at 1166. "Otherwise, defendants must produce evidence proving failure to exhaust" in a summary judgment motion brought under Rule 56. *Id.* If the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, overruled on other grounds by *Albino*, 747 F.3d 1162.

Exhaustion of Plaintiff's Claim Against Rubino. In his deposition, plaintiff essentially argued that the failure of prison officials to process his grievance within the time constraints proscribed by California law rendered the appeals process unavailable to him. ECF No. 81 at 19. The Ninth Circuit has not held that a prison's failure to adhere to administrative time constraints in responding to an inmate grievance renders the grievance system per se unavailable. But it has noted that prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Brown v. Valoff*, 422 F.3d 926, 953 n.18 (9th Cir. 2005). "Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Id.*

District courts in the Ninth Circuit have tended to follow the analysis in *Womack v. Bakewell*, No. CIV S-09-1431 GEB KJM P, 2010 U.S. Dist. LEXIS 93346, at *10-14 (E.D. Cal.

13

Sept. 8, 2010) when a plaintiff claims that delay in processing his grievance rendered the administrative remedy unavailable. This analysis focuses on the specific details of each case and, in particular, whether some avenue for administrative relief remained open to the plaintiff despite the delay. *Morales v. Sherwood*, No. 1:13-cv-01582-DAD-EPG-PC, 2016 U.S. Dist. LEXIS 80665, at *18-19 (E.D. Cal. June 20, 2016); *Rupe v. Beard*, No. CV-08-2454-EFS (PC), 2013 U.S. Dist. LEXIS 80041, at *42-48 (E.D. Cal. June 3, 2013).

Notably, a de minimis delay does not render the administrative remedy unavailable. *Rupe*, 2013 U.S. Dist. LEXIS 80041, at *47. "An inmate who files suit a mere one or two days after an appeal-response deadline has passed has probably not demonstrated that administrative remedies are effectively unavailable[.]" *Id.* Rather, delay will excuse a failure to exhaust where the inmate has waited a reasonable period of time and has received no response or explanation for the delay. *Id.*

Section 3084.8(c) of Title 15 of the California Code of Regulations provides the usual time limits for most inmate grievances. Under that section, the first level reviewer must respond to a grievance within 30 working days of receipt; the second level reviewer must also respond within 30 working days; and the third level reviewer must respond within 60 working days.

However, § 3084.9 provides some exceptions to the usual time limits, including for complaints of staff sexual misconduct. Under § 3084.9(a)(5), a grievance containing allegations of staff sexual misconduct must be processed as an emergency appeal and, as such, immediately reviewed by the "Hiring Authority or designee" and processed directly at the second level of review. The regulation also requires the Hiring Authority to perform an initial risk assessment to determine if the inmate is in substantial risk of imminent staff sexual misconduct within 48 hours and to perform a completed risk assessment within five calendar days "describing whether the appellant was determined to be in substantial risk of imminent staff sexual misconduct and the action(s) taken in response to the appeal." Cal. Code Regs. tit. 15, § 3084.9(a)(5)(A). The appeals coordinator must inform the inmate within 48 hours whether the grievance will be processed as an emergency staff complaint. *Id.* The regulation further provides:

/////

14

> If the conditions of exceptional delay exist as described in subsection 3084.8(d) [which govern delay in ordinary appeals], the time constraints of Second Level of Review or Third Level of Review may be extended in increments of 30 days, but shall not exceed 160 days from the date the appeal was received by the appeals coordinator. Any extension shall require written notification to the appellant and shall include the estimated completion date. The time consumed by the appellant in preparing the appeal shall not count in the calculation of a timely response.
>
> The appellant may consider an absence of a timely response at any level, including that of any properly noticed extension, a denial at that level.

Plaintiff argues that officials failed to treat his grievances against Rubino as emergency appeals and thus he should be excused from the exhaustion requirement. ECF No. 81 at 19.

Defendants have submitted evidence of two grievances filed by plaintiff that included allegations of sexual violence by Rubino. In Log No. CMF-M-16-0187 (filed on a traditional "inmate/parolee appeal" form on July 6, 2016), plaintiff wrote: "On 7-05-16 at approx. 8:00 a.m. I3 Cell #303 I told C/O Helmrich in writing that I was in pain as a result of being raped by C/O Rubino on 6-24-16. I was willfully denied care by Helmrich." ECF No. 84-11 at 9. In Log No. CMF SC 1000724 (filed on a "patient-inmate health care appeal" form on July 5, 2016), plaintiff wrote: "I was raped at CMF and denied med. care by LVN Gripe on 06-24-16." ECF No. 84-7 at 12. In the "action requested" section of the form, plaintiff wrote: "I request any and all med. care per PREA Fed. Law as a result of being sexually assaulted by C/O Rubino at CMF on 6-24-16." *Id.* Both grievances "in whole or part contain[ed] allegations of sexual violence or staff sexual misconduct" against Rubino and, therefore, both grievances should have been processed as emergency appeals under Cal. Code Regs. tit. 15, § 3084.9(a)(5). Under § 3084.9(a)(4) mandates that emergency appeals must be sent directly to the second level of review and that second level must be completed within five working days.

From what the court can glean from the appeal forms, prison officials forwarded Log No. CMF-M-16-0187 to the second level of review on July 13, 2016 – five working days after plaintiff submitted the grievance. ECF No. 84-11 at 10. The second level of review was completed on August 18, 2016 – 26 working days from the date of receipt at the second level and 31 working days after plaintiff filed the grievance. These responses were untimely under Cal. Code Regs. tit. 15, § 3084.9(a)(4).

Officials sent Log No. CMF SC 1000724 immediately to the second level and provided a response at that level within the regulatory time constraints for emergency appeals. ECF No. 84-7 at 13. However, the response addressed only plaintiff's inadequate care allegations against Gripe and not plaintiff's sexual assault allegations against Rubino. *Id.* at 14-15. Only at the third level of review did plaintiff get some response to those allegations. There, the reviewer informed him that his appeal had been categorized as "a health care staff complaint" and that "any allegations against CO Rubino are a custody matter unrelated to your allegation of health care staff misconduct. Therefore, these allegations will not be addressed in this appeal and should be addressed through the appropriate custody channels." *Id.* at 10. Officials mailed this response to plaintiff on July 27, 2016 – 17 working days after plaintiff filed the appeal. *Id.* at 13. Thus, even though this appeal was quickly processed, officials failed to respond to plaintiff's sexual assault allegations against Rubino until 17 working days after plaintiff filed the grievance, and their response was to tell plaintiff to file another appeal. On these facts, plaintiff has raised a triable issue that the failure of prison officials to timely respond to his allegations of staff sexual assault rendered the administrative process unavailable to him. Accordingly, Rubino's request for summary judgment on the claims against based on failure to exhaust must be denied.

<u>Exhaustion of Plaintiff's Claim Against Gripe.</u>  Plaintiff's appeal against Gripe, Log No. CMF SC 1000724, was addressed within the time limits set forth in § 3084.9. Thus, plaintiff cannot claim that he was effectively denied an administrative remedy pertaining to his claim against Gripe. The denial of that grievance at the third level of review occurred on July 27, 2016, which exhausted plaintiff's administrative remedy with respect to the Gripe claim. But, by that date plaintiff had already filed this action. ECF No. 1 (complaint filed July 22, 2016). Because plaintiff sued Gripe preemptively, even just five days before completing the administrative process, the court must dismiss this claim without prejudice. *Porter*, 534 U.S. at 524 (inmates must exhaust administrative processes prior to initiating suit); *McKinney v. Carey*, 311 F.3d 1198,1199-1201 (9th Cir. 2002) (inmates may not exhaust during the litigation).

/////

/////

16

ii. **The Merits**

As noted, plaintiff's claim against Gripe must be dismissed as unexhausted. Thus, the court turns to the merits of plaintiff's claim against Rubino. Plaintiff alleges that Rubino violated his Eighth Amendment rights by sexually assaulting him on the morning of June 24, 2016. The Eighth Amendment prohibits sexual harassment or abuse of prison inmates by correctional officers. *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012). In evaluating such a claim, courts must consider whether the officer acted with a sufficiently culpable state of mind, as defined by Eighth Amendment jurisprudence (the subjective prong) and if the alleged wrong was objectively harmful enough to violate the Constitution (the objective prong).[2] *Id.*

Rubino argues that the undisputed evidence establishes that he could not have sexually assaulted plaintiff at approximately 2:00 a.m. on June 24, 2016 as plaintiff claims. He has submitted electronic records from Rounds Tracker showing that he stopped at each cell around 2:00 a.m. that morning only for about 3 seconds. He further argues that plaintiff's medical records belie plaintiff's claim that his penis was swollen and bleeding. On the other hand, as Rubino points out, plaintiff has offered no evidence in opposition to summary judgment other than his own, self-serving assertion that Rubino assaulted him. But the motion for summary judgment still requests that plaintiff's credibility be rejected, a task for which summary judgment is inappropriate. The Rounds Tracker evidence certainly makes it unlikely that Rubino could have assaulted plaintiff during the interval of 2:03 to 2:05 a.m. when he was touching the sensor

---

[2] The subjective prong is met where the evidence shows that the defendant acted "maliciously and sadistically to cause harm." *Id.* at 1049. Because "sexual contact between a prisoner and a prison guard serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society," the court presumes such bad intent when sexual contact has been established. *Id.* (internal quotation marks omitted).
Regarding the objective prong, truly consensual sexual contact does not violate the Constitution. *See id.* at 1048-49. However, the inherent power imbalance between correctional officer and inmate makes it difficult to determine whether an inmate has really consented. *Id.* at 1048-49. Accordingly, when an inmate alleges sexual contact with a prison guard, the Ninth Circuit has directed district courts to presume that the contact was not consensual. *Id.* The defendant can rebut the presumption by showing that the conduct involved no coercive factors. *Id.* at 1049. Some examples of coercive factors are explicit expressions of non-consent and any kind of exchange for sex. *Id.*
Here, Rubino argues that the contact, consensual or not, never occurred.

unit to each cell, it does not establish what Rubino was doing prior to or after those checks. Thus, the Tracker evidence will make it difficult for a fact finder at trial to credit plaintiff's testimony that the sexual contact occurred, that evidence alone does not preclude a jury from doing so. In that sense, the Tracker evidence is not the kind of video evidence that was present in *Scott v. Harris*, 550 U.S. 372 (2007), on which defendant relies. In fact, Rubino has made no accounting for his time before and after the 2:00 a.m. cell checks. *See* ECF No. 84-10 (Rubino Decl.).

The medical records and medical declaration provided by Dr. Feinberg are more problematic for plaintiff, particularly when viewed in combination with the Tracker evidence. There is simply no medical evidence, at all, that plaintiff sustained any injury to his penis on June 24, 2016. The record contains only plaintiff's allegation. All medical providers who examined plaintiff's penis found no abnormality. Plaintiff did not pursue treatment for his claimed injuries. *See* ECF No. 81 at 29. Further, even assuming the sexual contact occurred, plaintiff testified that the alleged contact with Rubino felt pleasurable at the time. *Id.* at 25. This evidence starkly contradicts plaintiff's claim that his penis was so injured by the contact that he experienced "injury, pain, bleeding, and suffering" for 12 to 14 months. *See id.* at 28. In short, plaintiff has provided conflicting accounts of what occurred which simply cannot be reconciled. It strains credulity that plaintiff would have viewed the sexual contact as pleasurable while it occurred if he were being subjected to such force as would cause the injuries he claims to have sustained— injuries for which there is no medical corroboration. And these conflicting accounts are further tempered by Tracker evidence indicating a strong improbability that there could have been time for the event to occur as plaintiff has alleged. Viewing the evidence in the light most favorable to plaintiff does not mean ignoring plaintiff's own conflicting accounts nor ignoring all other evidence adverse to plaintiff.

Taking the entirety of evidence in the light most favorable to plaintiff, plaintiff has not provided the court with evidence from which a fair-minded jury could conclude that Rubino sexually assaulted plaintiff on the morning of June 24, 2016 causing him to experience injury, pain, bleeding, and suffering to his penis for 12 to 14 months. Accordingly, Rubino's motion for summary judgment should be granted.

18

**IV. Conclusion and Recommendation**

For the reasons set forth above, it is hereby RECOMMENDED that:

1. Plaintiff's motions for summary judgment (ECF Nos. 81 & 83) be DENIED;
2. Defendant Gripe's motion for summary judgment (ECF No. 84) be GRANTED for failure to exhaust administrative remedies and plaintiff's claim against her be dismissed without prejudice; and
3. Defendant Rubino's motion for summary judgment (ECF No. 84) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 22, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE